IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROBERTO LOZANO ROSALES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:26-cv-86 (LMB/WEF) |
| ) | |
| JOSEPH SIMON, et al., ) | |
| ) | |
| Respondents. ) | |

MEMORANDUM OPINION

Before the Court is petitioner Roberto Lozano Rosales's ("Lozano Rosales") Motion for Order to Show Cause ("Motion"), in which he seeks enforcement of the Court's January 20, 2026 Order requiring the federal respondents to provide him with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). Although Lozano Rosales received a bond hearing on February 3, 2026 in response to the Court's January 20, 2026 Order, he contends that the Immigration Judge's decision to deny his request for release on bond violated due process. The federal respondents have filed an opposition, and Lozano Rosales has filed a reply. For the reasons stated below, Lozano Rosales's Motion will be granted, and the federal respondents will be ordered to provide him with a new, constitutionally compliant § 1226(a) bond hearing before a new Immigration Judge.

I.

Section 1226(a) governs the detention of certain noncitizens "already present in the United States" pending the outcome of removal proceedings. Jennings v. Rodriguez, 583 U.S. 281, 303 (2018). Although § 1226(a) permits the Attorney General to detain noncitizens during removal proceedings, "the [Immigration and Nationality] Act and the regulations adopted to implement its authority afford aliens three opportunities to seek release from detention" either on

a monetary bond or on conditional parole.[1] Miranda v. Garland, 34 F.4th 338, 346 (4th Cir. 2022). The first opportunity is with an immigration officer, who is authorized to release the noncitizen on bond or conditional parole he "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). "If an immigration officer denies bond, sets bond at an amount the alien believes is too high or sets alternative conditions to bond the alien contends are unreasonable, an alien may appeal the officer's bond determination to an immigration judge, giving the alien a second opportunity at release." Miranda, 34 F.4th at 346 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1)). The "third opportunity comes if an alien is not satisfied with the immigration judge's decision," at which time the noncitizen "may appeal to the Board of Immigration Appeals ["BIA"] for another review." Id. at 346–47 (citing 8 C.F.R. §§ 236.1(d)(3), 1003.19(f), 1236.1(d)(3)). "At each step in this process, the government requires the [noncitizen] to prove that he or she is not a danger to the community or a flight risk." Id. at 347 (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8)).

In conducting a § 1226(a) bond hearing, an Immigration Judge "may look to a number of factors," including:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee

---

[1] As the Fourth Circuit has stated, the Court occasionally uses the term "alien" because Congress has used the term in the text of the applicable statutes and regulations. The Court's "use of the term 'alien' is not intended to express any opinion, pejorative or otherwise, about the [petitioner] in this action or others challenging their detention under our immigration laws." Miranda v. Garland, 34 F.4th 338, 345 n.1 (4th Cir. 2022).

prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006). "These factors provide a non-exhaustive, but flexible menu of considerations relevant to detention decisions." Miranda, 34 F.4th at 362. And of course, the procedures used by federal immigration officials to deny a noncitizen's request for release on bond always must comply with fundamental principles of due process. See id. at 359 (applying the Mathews v. Eldridge "balancing test to evaluate due process challenges to the procedures used by the government under § 1226(a)").

II.

The following facts are derived from the pleadings, the exhibits, and the audio recording of the February 3, 2026 bond hearing, which the federal respondents have provided to the Court. Lozano Rosales is a native and citizen of El Salvador. [Dkt. No. 1] at ¶ 1. He has resided in the United States since 2023, and on January 8, 2026, he was arrested by ICE while driving to work. Id. ¶¶ 49–50. On January 13, 2026, Lozano Rosales filed a Petition for Writ of Habeas Corpus ("Petition"), arguing that he was entitled to a § 1226(a) bond hearing. [Dkt. No. 1]. In response, the federal respondents filed a pleading indicating that Lozano Rosales's Petition did "not differ in any material fashion" from the factual and legal issues presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818-LMB-WEF (E.D. Va.), in which the Court determined that an individual who had been present in the United States for several years was not detained under 8 U.S.C. § 1225(b)(2) but rather detained under § 1226(a), thus entitling him to a bond hearing. [Dkt. No. 4]. On January 20, 2026, the Court entered an Order finding that Lozano Rosales's detention was governed by § 1226(a) and directing the federal respondents to provide him with a standard bond hearing. [Dkt. No. 5]. The Court also ordered Lozano Rosales's prompt release from custody pending that bond hearing. Id.

3

On February 3, 2026 at 8:30 AM, Lozano Rosales appeared with counsel via Webex for his scheduled bond hearing before Immigration Judge David Gardey in the Annandale Immigration Court. [Dkt. No. 10] at ¶ 2. Lozano Rosales argued that he should be released on bond because he presents neither a flight risk nor a danger to the community, citing his steady employment history, fixed Maryland address, ties to the community, pending asylum application,[2] attendance at immigration hearings, and lack of criminal history. Lozano Rosales provided the Immigration Judge with his 2023–2024 tax returns and letters from his co-worker, landlord, friends, and cousins, at least some of whom are U.S. citizens. He also represented that Brandon Nolan ("Nolan"), his co-worker,[3] has agreed to sponsor him and ensure that he attends immigration hearings and complies with court orders. The Department of Homeland Security ("DHS") attorney argued that Lozano Rosales should be detained pending the removal proceedings because Lozano Rosales entered the United States without inspection and has no immediate ties to the United States or to U.S. citizens. The DHS attorney also noted that Lozano Rosales's asylum application is highly speculative and that his co-worker did not specifically indicate that he was willing to sponsor Lozano Rosales in his letter of support. Lozano Rosales's counsel responded, and the Immigration Judge issued an oral ruling:

> I'm going to deny the request for bond. I do find that you have established that he is not a danger to the community; however, I do not find that you have established he is not a risk of flight. He's only been in the United States since 2023, but still since that time he has taken no effort to legalize his status, and he has been working unlawfully. Also, there's concern about the tax returns that have been submitted. The employment letter that has been submitted indicates that since 2023, he has

---

[2] It is unclear from the record before the Court when Lozano Rosales filed his asylum application.

[3] Although the Immigration Judge refers to Nolan as Lozano Rosales's employer, Nolan's letter states: "I have known Roberto for the past two years through my business, Nolan Masonry, LLC. During this time, Roberto worked for a Contractor who was on the same job as my company, which allowed me to regularly observe his work ethic and character." [Dkt. No. 10-1] at 11.

4

earned $1,000 a week, but the income reported in 2023 to 2024 are only $8,7950 [sic], indicating that either the employment letter is not accurate or he is grossly underreported his income. He also has $9,200 in his checking account, but he claims only $8,000 income. Also, as to sponsor, I know that counsel has indicated that Mr. Nolan will be willing to act as a sponsor, but his letter does not state that. Also, respondent is seeking I-589, but it is subject to the one-year bar, and it's unclear given the situation in El Salvador . . . that he is likely of getting any relief. He's not married, he has no children. He has some extended family members in the United States, but given his limited stay and his continued unlawful presence and unlawful work, there's no assurance that he will comply with future orders of the court to be removed or to comply otherwise with appearing in court. The fact that he appeared soon after he was released on bond does not establish that he will not in the future given his past unlawful presence and other activities fail to remove himself if he was ordered to do so.[4]

The Immigration Judge required Lozano Rosales to self-surrender to DHS by February 6, 2026 at 5:00 PM.[5] According to counsel, Lozano Rosales reported to ICE's Baltimore Field Office on February 6, 2026 at approximately 4:20 PM, but ICE did not take him into custody. Additionally, it is unclear from the record before the Court whether Lozano Rosales has appealed the Immigration Judge's detention decision to the BIA; however, on February 6, 2026, Lozano Rosales filed the pending Motion, which seeks enforcement of this Court's January 20, 2026 Order and contends that the bond hearing he received did not comply with procedural due process requirements. [Dkt. No. 10].

III.

Before reaching the merits of Lozano Rosales's Motion, the Court begins, as it must, with considering whether it has jurisdiction to determine whether the federal respondents provided

---

[4] This quote is taken from the audio recording of the February 3, 2026 bond hearing. It is an unofficial transcript prepared by the Court.

[5] The Immigration Judge told Lozano Rosales's counsel that Lozano Rosales was to self-surrender to DHS by "Friday at 5:00." The Friday following the bond hearing was February 6, 2026; however, the Immigration Judge told Lozano Rosales through an interpreter that he was to self-surrender to DHS by "February 5, 2026 at 5:00."

5

Lozano Rosales with a constitutionally compliant § 1226(a) bond hearing. The federal respondents contend that 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii) strip the Court of jurisdiction to review an Immigration Judge's decision to deny bond. The federal respondents also assert that Lozano Rosales failed to exhaust his administrative remedies because he did not appeal the adverse bond decision to the BIA before seeking relief from this Court. For the reasons explained below, these arguments are rejected.

A. Section 1226(e)

The federal respondents first argue that 8 U.S.C. § 1226(e) precludes the Court from exercising jurisdiction over Lozano Rosales's Motion. Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." According to the federal respondents, because Lozano Rosales's Motion challenges the Immigration Judge's discretionary bond decision, § 1226(e) strips the Court of jurisdiction. [Dkt. No. 16] at 2–5.

It is undisputed that "§ 1226(e) precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." Jennings, 583 U.S. at 295 (cleaned up). In this sense, Judge Ellis's opinion in Hatami v. Chertoff, 467 F. Supp. 2d 637 (E.D. Va. 2006), which is cited heavily by the federal respondents, is instructive. Hatami involved a noncitizen from Afghanistan who had been convicted in Virginia of domestic assault and battery. Id. at 638–39. After the BIA denied Hatami's request for cancellation of removal, Hatami submitted three consecutive bond applications which were denied because "DHS ha[d] made a prima facie showing of dangerousness" based on "a facially legitimate concern with [Hatami's] behavior." Id. at 639.

6

Hatami challenged the Immigration Judge's bond decision in federal court, claiming that the Immigration Judge "failed to provide a 'meaningful' bond hearing . . . because he relied on the government's 'bare bones allegations' of dangerousness." Id. The district court dismissed his habeas action, finding that § 1226(e) precluded judicial review because Hatami "challenge[d] only the decision to deny bond under the statute." Id. at 641–42 (emphasis added). By using the qualifier "only," it is clear that Judge Ellis did not close off other grounds upon which a noncitizen could seek relief from an Immigration Judge's denial of bond.

Indeed, as recognized by both the Supreme Court and the Fourth Circuit, § 1226(e) does not preclude the Court's exercise of jurisdiction where a noncitizen raises a constitutional challenge to the bond hearing he received. In Jennings, the Supreme Court made clear that § 1226(e) "does not preclude challenges to the statutory framework that permits the alien's detention without bail." 583 U.S. at 295 (cleaned up). There, several noncitizens mounted Fifth Amendment challenges to 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), contending that they were entitled to periodic bond hearings during the course of their detention. Id. at 286, 312. The Court held that because the noncitizens "contest[ed] the constitutionality of the entire statutory scheme," and because "the extent of the Government's detention authority is not a matter of 'discretionary judgment,'" it was able to "consider the merits of their claims." Id. at 296.

Following Jennings, the Fourth Circuit held in Miranda that § 1226(e) did not prohibit the exercise of jurisdiction where noncitizens challenged "the Attorney General's decision to adopt procedures placing the burden of proof on aliens detained under § 1226(a)." 34 F.4th at 352. Specifically, the court stated that a "constitutional challenge" to the Attorney General's "categorical, across-the-board" procedures "is beyond the scope of § 1226(e)." Id. Taking Jennings and Miranda together, courts in this district have concluded that § 1226(e) does not bar judicial review where a noncitizen asserts that the factors an Immigration Judge employed in

7

denying his request for release on bond failed to comport with due process.[6] See Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 3 (E.D. Va. Feb. 18, 2026).

Here, Lozano Rosalez "does not seek routine review of an Immigration Judge's discretionary bond determination." [Dkt. No. 18] at 1. Rather, his challenge is constitutional in nature because he "seeks enforcement of this Court's prior habeas order, which required a constitutionally adequate and legally compliant bond hearing." Id. Specifically, he contends that the facts the Immigration Judge relied upon to deny him bond—including his unlawful status, his working without authorization, and his speculative tax issues—were so lacking in probative value that the consideration of those facts deprived him of a fair and individualized bond hearing.[7] Id. 3–4. Because "this is precisely the type of claim that belongs in federal court," Picado v. Hyde, 2026 WL 352691, at *4 (D.R.I. Feb. 9, 2026) (cleaned up), § 1226(e) does not strip the Court of jurisdiction to consider Lozano Rosales's Motion.

B. Section 1252(a)(2)(B)(ii)

The federal respondents' second jurisdictional argument is based on 8 U.S.C. § 1252(a)(2)(B)(ii), which prohibits federal courts from reviewing any "decision or action" of

---

[6] Courts in other jurisdictions have reached similar conclusions. See Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) (holding that § 1226(e) "does not limit habeas jurisdiction over constitutional claims or questions of law"); Trejo v. Bullock, 2026 WL 598391, at *2 (E.D. Tenn. Mar. 3, 2026) ("[T]his Court's jurisdiction to review Petitioner's bond hearing is limited to whether it satisfied due process or otherwise suffered some defect that rendered it noncompliant with this Court's Order."); Picado v. Hyde, 2026 WL 352691, at *4 (D.R.I. Feb. 9, 2026) (finding that § 1226(e) does not strip the court of jurisdiction where a noncitizen "argues that the IJ failed to comport with due process requirements when she denied him release on bond"); Garcia v. Hyde, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025) ("[C]ourts can review the IJ's decision to ensure that it comported with procedural due process requirements.").

[7] Although the Court recognizes that Lozano Rosales has also argued that the Immigration judge was not an impartial adjudicator because "[t]he immigration court system has been transformed into a body that is structurally incapable of upholding Petitioner's statutory and constitutional rights," [Dkt. No. 18] at 4, the Court declines to address that issue at this time.

"the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [her] discretion." According to the federal respondents, because the decision of whether to release a noncitizen on bond or conditional parole pending the outcome of removal proceedings is committed to agency discretion, § 1252(a)(2)(B)(ii) forecloses jurisdiction. [Dkt. No. 16] at 5–8. This argument is unpersuasive for one simple reason: Lozano Rosales's claim is limited to whether the Immigration Judge's decision comports with due process, and federal immigration officials do not have discretion as to whether to comply with the Fifth Amendment in denying a noncitizen's request for release on bond. Accordingly, § 1252(a)(2)(B)(ii) does not bar the exercise of jurisdiction. Accord Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 4 (E.D. Va. Feb. 18, 2026); see also Miranda, 34 F.4th at 353 n.6 (holding that § 1252(a)(2)(B)(ii) does not bar jurisdiction where the noncitizens "challenge[d] the extent of the government's authority under § 1226(a) rather than a discretionary decision").

C. Exhaustion

Finally, the federal respondents argue that Lozano Rosales failed to exhaust his administrative remedies by not presenting his "disagreement" with the Immigration Judge's adverse bond decision to the BIA. [Dkt. No. 16] at 4. That argument also fails. In Miranda, the Fourth Circuit considered whether a noncitizen asserting a Fifth Amendment challenge to the procedures used during a § 1226(a) bond hearing must appeal to the BIA before seeking relief in federal court. 34 F.4th at 351. The Fourth Circuit concluded that because "no statute applicable to [the claims at issue] provides that administrative exhaustion is jurisdictional," the "district court had discretion to decide if administrative exhaustion is required." Id.; see McCarthy v. Madigan, 503 U.S. 140, 144 (1992) ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs."). Here, the federal respondents have not advanced any

9

compelling argument for the proposition that Lozano Rosales should be required to appeal to the BIA before seeking relief in this Court, and the Court will not require Lozano Rosales to "sit in an ICE detention facility" for months on end while he awaits a BIA decision. Picado, 2026 WL 352691, at *6. Accordingly, "the [C]ourt will exercise its discretion to excuse administrative exhaustion" in this habeas action. Dubon Miranda v. Barr, 463 F. Supp. 3d 632, 643 (D. Md. 2020), aff'd sub nom. Miranda, 34 F.4th 338; accord Diahn v. Lowe, 2026 WL 84576, at *5 (M.D. Pa. Jan. 12, 2026).

IV.

Turning to the merits of Lozano Rosales's Motion, the Court finds that most of the facts the Immigration Judge relied upon in denying Lozano Rosales's request for release on bond violated due process. In denying Lozano Rosales's request, the Immigration Judge found that, although Lozano Rosales established that he is not a danger to the community, he failed to establish that "he is not a risk of flight." In support of that determination, the Immigration Judge relied upon three facts that do not pass constitutional muster, and at least one of which also violates long-standing BIA jurisprudence.

First, the Immigration Judge pointed to Lozano Rosales's unlawful status. He stated that Lozano Rosales "has taken no effort to legalize his status in the United States" and "given his limited stay and his continued unlawful presence . . . there's no assurance that he will comply with future orders of the court to be removed." The Immigration Judge also speculated as to Lozano Rosales's likelihood of success on his pending asylum application, stating that the application "is subject to the one-year bar, and it's unclear given the situation in El

Salvador . . . that he is likely of getting any relief."[8] As an initial matter, it is entirely inconsistent to claim that a noncitizen with a pending asylum application "has taken no effort to legalize his status" in the United States. Quite the opposite, "[a]sylum provides individuals who qualify several distinct benefits," including "a path to citizenship." Cap. Area Immigrants' Rts. Coal. v. Trump, 471 F. Supp. 3d 25, 32 (D.D.C. 2020) (citing Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33,829, 33,832 (July 16, 2019)). Moreover, a noncitizen's unlawful status cannot provide a legitimate consideration upon which an Immigration Judge may deny a request for release on bond under § 1226(a) given that every individual who appears before an Immigration Judge for custody redetermination lacks lawful status. To consider this fact violates both § 1226(a)'s requirement of an individualized hearing and fundamental due process principles. As another jurist in this district aptly stated, "an individual's bond hearing fails to comport with due process where an Immigration Judge relies on considerations that would lead to an automatic denial of bond in all cases." Argueta-Portillo v. Bondi, et al., 1:26-cv-122-MSN-LRV, Dkt. No. 16 (E.D. Va. Mar. 2, 2026).

BIA precedents confirm this conclusion. In Matter of Patel, the BIA considered whether an Immigration Judge erred in releasing a noncitizen on a bond of $500 rather than releasing him on his own recognizance. 15 I. & N. Dec. 666, 666–67 (BIA 1976). In setting a bond of $500, the Immigration Judge relied upon the noncitizen having "overstayed his student visa" and the fact that "the visa petition of which he is the beneficiary was denied because he lacked a labor certification." Id. at 667. But the BIA found that "[t]hese factors bear little if any relevance to the issue of whether or not the [noncitizen] is likely to appear for his deportation proceeding."

---

[8] Of course, the one-year filing deadline does not automatically bar a noncitizen from seeking asylum because the noncitizen may assert extraordinary or changed circumstances to excuse an untimely filing. 8 U.S.C. § 1158(a)(2)(D).

11

Id. According to the BIA, "[s]uch a broad interpretation of what constitutes an 'adverse factor' in this context could result in requiring a bond of almost every alien who is held in deportation proceedings." Id. Therefore, the BIA released the noncitizen on his own recognizance. Id. The BIA has continued to cite Matter of Patel for the proposition that "factors unique to each alien must be evaluated in determining suitability for release on custody." In re Helia de la Cruz-Palencia, 2011 WL 2261251, at *1 (BIA May 13, 2011) (unpublished).

Second, the Immigration Judge emphasized that Lozano Rosales has been working in the United States without authorization. This is problematic for two reasons. To begin, similar to the previous discussion concerning the consideration of a noncitizen's unlawful status, Lozano Rosales's "unauthorized employment is inextricably related to the unlawful status that has caused his detention and request for a bond hearing in the first place." Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 6 (E.D. Va. Feb. 18, 2026). If an Immigration Judge could consider a noncitizen's unauthorized employment—which typically accompanies a noncitizen's unlawful status—"discretionary detention under § 1226(a) . . . would become a de facto mandatory § 1225 detention." Id. Moreover, no reasonable inference of flight risk can be drawn from a steady history of employment, authorized or not. Id. Rather, steady employment often reflects economic and residential stability and ties to the community in which the noncitizen is employed.[9] In short, the link between Lozano Rosales's unauthorized

---

[9] In the criminal context, a steady employment history typically entitles a defendant to release pending trial. See, e.g., United States v. Adams, 794 F. Supp. 2d 989, 993 (S.D. Iowa 2011) (finding that "the Government has not shown by a preponderance of the evidence that Defendant will not appear as required if released pending trial" because "[f]or the two years leading up to her arrest she had maintained steady employment . . . and apparently will be able to return to this job if released pending trial").

employment and any risk of flight is so tenuous that the Immigration Judge's reliance on that fact deprived Lozano Rosales of constitutionally sufficient process.

Third, the Immigration Judge pointed to potential inconsistencies in Lozano Rosales's tax returns. According to the Immigration Judge, Lozano Rosales's employment letter indicated that he earned $1,000 per week, but his tax returns indicate that he reported approximately $8,000 in income each year, demonstrating "that either the employment letter is not accurate or he is grossly underreported his income." As an initial matter, it is unclear from the record before this Court how the Immigration Judge concluded that Lozano Rosales was earning $1,000 per week. Attached to Lozano Rosales's Motion are the exhibits he provided to the Immigration Judge in support of his request for release on bond, and although the Immigration Judge cited Lozano Rosales's employment letter for the proposition that Lozano Rosales was earning $1,000 per week, that statement is unsupported by the evidence before this Court. Moreover, an underreporting of income, standing alone, does not provide the evidentiary support constitutionally required to deny a noncitizen's request for release on bond, particularly given that the Immigration Judge did not consider any condition or set of conditions that will reasonably ensure Lozano Rosales's appearance at future proceedings. Accord Mendez Trigueros v. Guadian, et al., 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 6 (E.D. Va. Feb. 18, 20260). In sum, the facts relied upon by the Immigration Judge do not provide a constitutionally sufficient basis upon which to have denied Lozano Rosales's request for release on bond based on the conclusion that he poses a risk of flight.

V.

For all the reasons stated above, Lozano Rosales's Motion, [Dkt. No. 10], will be granted by an Order to be issued with this Memorandum Opinion, which will require the federal

13

respondents to provide Lozano Rosales with a new, constitutionally compliant bond hearing pursuant to § 1226(a) before a different Immigration Judge.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record.

Entered this 11th day of March, 2026.

Alexandria, Virginia

/s/ /LMB/
Leonie M. Brinkema
United States District Judge